IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN CURRY, R09761 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:16-cv-00820-SMY-RJD |
| ) | |
| KIMBERLY S. BUTLER, ) | |
| WILLIAM A. SPILLER, ) | |
| KENT E. BROOKMAN, ) | |
| TODD BROOKS, ) | |
| SHAUN GEE, ) | |
| BRANDON ANTHONY ) | |
| and CORY BUMP ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATIONS

DALY, Magistrate Judge:

Before the Court is plaintiff Steven Curry's motion for a preliminary injunction and his supplemental motions for preliminary injunctive relief. (*See* Docs. 7, 10 and 33). The defendants filed a response in opposition (Doc. 29) and Curry filed a reply (Doc. 45). This is a prisoner civil rights lawsuit and Curry seeks a preliminary injunction in the form of a prison transfer. Curry is currently an inmate at Menard Correctional Center ("Menard") and he would like to be transferred to the protective custody unit at Pontiac Correctional Center ("Pontiac"). Curry asserts that his life is in danger from enemy gang members and that he is not safe at Menard. On October 13, 2016 an evidentiary hearing was held on Curry's motion. Curry was present at the hearing via videoconference from Menard along with two witnesses for the defense. Upon review of the filings to date and the evidence presented at the hearing, it is RECOMMENDED that Curry's motion for a preliminary injunction be denied.

1

## I. BACKGROUND

Plaintiff Steven Curry is an inmate with the Illinois Department of Corrections at Menard with a parole date of July 5, 2026.[1] Curry testified at the preliminary injunction hearing that he arrived at Menard in August of 2013 on a "seg to seg" transfer (transferred from one prison's segregation unit to another prison's segregation unit). Additionally, Curry was also classified as a "black striper" within the IDOC system. Inmates who assault staff members or who have been discovered to possess weapons (e.g., makeshift knives or "shanks") are subject to the black striper classification. As punishment, black stripers are required to serve three years in a maximum security prison and are placed in special housing units. They are also required, as the name suggests, to wear black and white striped prison uniforms.

Curry's stay at Menard was uneventful until January 14, 2015 when he received a threatening letter in the mail. Curry states in his complaint that "[w]hen plaintiff began to read the letter plaintiff notice[d] that it contained threatening statements toward him, what was to happen to him once the "boys" come across him, and that they had plaintiff['s] family address." (Doc. 1, p. 6). The letter did not indicate who it was from, but Curry suspected that it was sent from gang members associated with the Black Disciples. On January 15, 2015 Curry filed an emergency grievance requesting to speak with correctional staff about the letter. The Menard Warden deemed the grievance an emergency and later that month Curry discussed the issue with defendant Brandon Anthony at the Menard internal affairs office. *Id*. Anthony told Curry that he "would see what he could do." *Id*.

The next incident occurred early the following year. On February 12, 2016 Curry was involved in an altercation with four members of the Black Disciples gang. Curry testified at the

---

[1] *See* Illinois Department of Corrections Offender Search website, https://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last accessed December 1, 2016).

hearing that he was out of his cell during recreation time when he was assaulted in the bathroom. Curry later received a disciplinary report for his involvement in the fight and he was punished with one year of segregation. (Doc. 1-1, p. 6). The incident report indicates that the altercation was more than a mere assault. The report states that Menard corrections staff conducted an investigation and it was discovered that the incident in the bathroom was the result of a Black Disciples meetup to conduct a "violation." *Id*. The term "violation" is used by gangs to "denote the prescribed punishment (usually brutal) for failure to abide by gang rules." *United States v. Garcia*, 754 F.3d 460, 467 (7th Cir.) (describing Latin Kings practices). According to the disciplinary report, Curry met up with the other inmates to voluntarily receive the violation, but he later decided to fight back and exit the bathroom. (Doc. 1-1, p. 6).

Curry was then involved in another altercation the following day, February 13, 2016. As he was walking to the Menard chow hall, Curry and two other inmates named Hoskins and Tucker (two of the inmates involved in the bathroom incident) began assaulting each other. (Doc. 1-1, p. 8). Curry received a disciplinary report for this incident as well. *Id*. The report states, "All three inmates began fighting officer gave multiple direct orders to cease fighting and get on the ground and did not comply. Tower 3 and Tower #2 fired a warning shot. Inmate then complied." *Id*. As punishment, Curry received five months in segregation. *Id*.

The third and most recent altercation occurred on March 27, 2016. Curry was in the segregation unit yard when he began fighting with an inmate named Taylor. Curry testified at the hearing that Taylor struck first. According to Curry, Taylor started the fight at the direction of another inmate who was in an adjacent fenced-in area outside the segregation yard. Curry also received a disciplinary report for this incident and he received one month in segregation as punishment. (Doc. 1-1, p. 31).

Although he has not been involved in any physical altercations since the March 27, 2016 incident, Curry stated that he has recently been moved within his cell house from 8 gallery to 6 gallery. Curry states in his supplemental motion for a preliminary injunction (Doc. 10) that there are enemy gang members within close proximity to his new cell and that he is directly adjacent to inmate Taylor's cell. Curry is currently located in a segregation unit, and he stated at his hearing that he is scheduled to leave segregation in August of 2017.

## II. ANALYSIS

Curry now seeks a preliminary injunction. Succinctly stated; "a preliminary injunction is an injunction that is issued to protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2947 (3d ed.). Issuing a preliminary injunction "is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction, Curry must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

Curry's ability to obtain injunctive relief is also limited by the Prison Litigation Reform Act ("PLRA"). See 18 U.S.C. § 3626. The PLRA states that preliminary injunctions issued in prisoner civil rights lawsuits "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C.A. § 3626(a)(2). Additionally, "[t]he court shall give

substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief [.]" *Id*.

Here, Curry has not established that he is likely to succeed on the merits or that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 1984, 128 L. Ed. 2d 811 (1994). While the three assaults in February and March of 2016 are troubling, the evidence presented demonstrates that Menard Officials have not disregarded Curry's concerns. In fact, corrections staff conducted investigations into the assaults and determined that Curry's conduct warranted disciplinary action. Curry received one year of segregation for the February 12, 2016 incident in the recreation area bathroom (Doc. 1-1, p. 6), five months of segregation for the February 13, 2016 incident (Doc. 1-1, p. 8) and one month of segregation for the March 27, 2016 incident (Doc. 1-1, p. 31). Moreover, records attached to Curry's complaint indicate that prison officials have repeatedly investigated his concerns regarding his safety and assessed that a prison transfer was not needed. (See Doc, 1-1, pp. 21 and 25). Curry will also be located in disciplinary segregation through August of 2017, and as such, his interactions (and possibility for altercations) with other inmates will be sharply limited. (See Doc. 1-1, p. 21 with handwritten note from Warden Butler stating that "Inmate can sign into Prot. Custody when released from Seg").

Furthermore, the evidence submitted does not establish that Curry will suffer irreparable harm in the absence of a preliminary injunction. The Court recognizes that there is a certain degree of risk inherent in a maximum security prison environment and that prisoners have a right

to avoid conditions of confinement that present "a substantial risk of serious harm." But prisoners are not entitled to a completely risk free environment. The Seventh Circuit noted in another prisoner failure to protect case that:

> [Corrections staff are] required to refrain from placing [inmates] in harm's way gratuitously. The qualification "gratuitously" is important, because prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more. Guards cannot turn away persons committed by the courts; nor do individual guards have any control over crowding and other systemic circumstances. All that can be expected is that guards act responsibly under the circumstances that confront them. See *McGill v. Duckworth*, 944 F.2d 344 (7th Cir.1991). A guard may be responsible without being credulous. Some prisoners are manipulative and cry "wolf" in an effort to have a cell to themselves or choose a favored cellmate.

*Riccardo v. Rausch,* 375 F.3d 521, 525 (7th Cir. 2004). In this case, Curry was transferred to Menard as part of the black striper program; this means that Curry either assaulted a prison staff member or possessed a weapon. Curry now asks this Court to transfer him to a different prison. This request should be denied, at least right now at this stage of the litigation.

Although Curry has not established that he is likely to succeed on the merits or that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief, the denial of his motions does not foreclose the availability of injunctive relief at the conclusion of trial. Curry may also file a new motion for preliminary injunctive relief if circumstances change.

## **CONCLUSION**

It is RECOMMENDED that Curry's motions for preliminary injunctive relief (Docs. 7, 10 and 33) be denied.

SO RECOMMENDED.

DATED:  **December 1, 2016.**

*s/ Reona J. Daly*
**REONA J. DALY**
**UNITED STATES MAGISTRATE JUDGE**
